DÍAZ ET AL., PLAINTIFFS AND APPELLANTS, *v.* ROSADO ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Arecibo in an Action of Ejectment and for Damages.

No. 2247.—Decided May 18, 1922.

PLEADING—EVIDENCE—VARIANCE.—In accordance with sections 136, 137 and 142 of the Code of Civil Procedure, it is not sufficient that a party merely alleges during the trial that he has been misled by a variance between the pleadings and the evidence, but he must show in some manner satisfactory to the trial court that the variance is material.

The facts are stated in the opinion.
*Mr. L. Llorens Torres* for the appellants.
*Messrs. A. M. Villamil* and *F. R. Flores* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

An amended complaint herein alleges, among other things:

"3. The plaintiffs are now the sole and lawful tenants in common of the following real property:

" 'Piece or parcel of property consisting of 4 acres (*cuerdas*), equal to 1 hectare, 57 ares, 21 centares, situated in the ward of El Pueblo of the municipal district of Barceloneta, judicial district of Arecibo, now bounded on the north by the street known as Llenza Feliú and lots of the Succession Martínez & Eguen, formerly the property of the Central Plazuela which took title from Bonocio Llenza; on the west by property now belonging to the Central Plazuela and formerly pertaining to Bonocio Llenza; on the east

by the river Manatí, and on the south by the road leading to the Marrero Bridge, now Union Street.'

"4. The plaintiffs, in conjunction with their deceased brother, Manuel Días Llenza, inherited one-half of said piece or parcel of land from their grandfather, Bonocio Llenza y Feliú, under the will executed by him in Manatí before Notary Francisco I. Náter on February 6, 1891, and the remaining half from their mother, Joaquina Llenza y Gago, under the will executed by her before the same notary in 1893. And it is here set out that the plaintiffs were all minors at the time they acquired the said property and that the part or share corresponding to the other heir, Manuel Díaz Llenza, who died before becoming of age, was inherited by his father, Manuel Díaz Fonseca, and passed to the plaintiffs under title of inheritance.

"5. Said four acres of land are traversed from north to south by a street called Calle del Conde de Caspe which divides the said land into two sections from north to south. Both sections on the east and west are at present parceled out in lots, each section containing one block of lots. The block on the east, that is the block between Conde de Caspe Street and the River Manatí is at present divided into ten lots, of which, starting from the north, lot No. 1 is now unlawfully in the possession of the defendant, Francisco Estela; No. 2, of Alejandro Fernández; No. 3, of Ramona Balseiro; No. 4, of Manuel Masso; No. 5, of Evangelista Caballero; No. 6, of Santiago Acevedo; No. 7, of Primitivo Mercado; No. 8, of Succession Martínez & Eguen and the so-called Succession of Avelino Natal; No. 9, of Ambrosio Sánchez, and No. 10, of José I. Santana. And the block on the west, or that lying between Conde de Caspe Street and lands belonging to the Central Plazuela, is at present divided into nine lots, of which, starting from the north, No. 1 is unlawfully possessed by the defendants Adolfo Eguen and Vicenta Arzuaga; No. 2. by the so-called Protestant Church; No. 3, by Isabel Caballero; No. 4, by the defendants Venancio González and Isaac Martínez; No. 5, by Evangelista Caballero; No. 6, by Fernando Suria and Juan T. Puig; No. 7, by Alejandro Fernández and Antonio Rodríguez Avilés; No. 8, by Ramón Rosado, and No. 9, by Ramón Balseiro. And we here contend that all of the said defendants are unlawfully holding and possessing the said land without legal title thereto and without the consent of the plaintiffs."

Plaintiffs appeal from a judgment of dismissal based

upon a statement by the trial judge, from which we take the following extracts:

"The default of the defendants The Protestant Church and José Y. Santana was noted.

"The defendants answered denying the complaint in substance and claiming that each was in quiet, public and peaceful possesion of a lot in the town of Barceloneta, under just title and as rightful owners.

"Before the trial and based upon a written compromise presented by attorney Llorens Torres for the plaintiffs and attorney Huyke for defendants Ramón Balseiro and Ramón Rosado, the court, upon petition of the parties named and in accordance with the provisions of section 313 of the Code of Civil Procedure, rendered judgment as to the said defendants in keeping with the said compromise.

"In closing the evidence for the plaintiffs at the trial and upon motion of the attorney for defendant Venancio González in which the attorney for the plaintiffs acquiesced, the court dismissed the case as to the said defendant Venancio González.

\*          \*          \*          \*          \*          \*          \*

"In carrying out the operations in May, 1892, for the partition of the estate left at the death of Bonocio Llenza y Feliú, the plaintiffs were allotted a one-half ownership valued at $200 of a rural property worth $400 situate in the ward of Pueblo, municipal district of Barceloneta, consisting of four acres, bounded on the north and west by lands of Bonocio Llenza; on the east by the river Manatí, and on the south by lands of Bonocio Llenza and a road leading to the, Marrero bridge. It is to be noted that while in the foregoing description no mention is made of the Conde de Carpe Street of the town of Barceloneta mention thereof is made in descriptions of other properties contained in same deed of partition.

"As links in their chain of title to the property sought to be recovered, plaintiffs submitted the said allotment made in the mentioned deed of February 11, 1846, executed 46 years ago, and showing the sale made by Ignacio Guzmán to Bonocio Llenza of one acre of land, no description whereof is given, and of three other acres likewise undescribed.

"They have also presented the deed of partition of the estate of the late Joaquina Llenza y Gago, dated February 11, 1895, whereby the plaintiffs were allotted 'a joint interest for one-half of its value for the eleventh part of an undivided and common

interest in a rural property situate in the ward of Pueblo, municipal district of Barceloneta, consisting of four acres, bounded on the east by the Manatí river, on the north by lands of Joaquina Gago, on the west by lands of Clementina Llenza, and on the south by the road leading to the Marrero bridge, separated into two properties by the Conde de Carpe Street.

"As will be seen, the three documents produced by the plaintiff do not establish the fact that the properties described therein are identical with those sought to be recovered, and much less of course can each and every of the lots claimed be shown to be identical with the property described in the complaint and forming part thereof.

"In their respective answers the defendants denied that they held any property belonging to the plaintiffs and the latter, pursuant to section 108 of the Law of Evidence, were bound to submit proof in corroboration of their statement.

"The plaintiffs have not shown conclusively, as required in actions for the recovery of property, that the property described in Paragraph III of the complaint is the identical property of which they inherited one-half in the year 1895 from their mother, Joaquina Llenza, and the other half by a devise from their grandfather, Bonocio Llenza, and much less that each and all of the lots indicated in paragraph V of the complaint, but not described, form a part of the property described in clause III.

"In pursuance of the provisions of section 450 of the Civil Code, a person holding as owner is presumed legally to hold under rightful title and he cannot be compelled to show the same.

"In a suit in ejectment it is not enough to describe the property sought to be recovered, but further proof must be adduced that such property is in the possession of the defendants. There is no such proof in the present case.

"Although the failure on the part of the plaintiffs to establish the identity of the property claimed relieves the defendants of the necessity of proving their respective possessory titles under the legal presumption created by section 450 of the Civil Code in their favor, they have nevertheless produced public instruments showing their respective lawful acquisition of the lots they hold with the houses thereon and the possession thereof, sometimes by them as such owners and at others, including the time the same were held by their vendors, establishes a title of acquisitive prescription which effectually extinguishes any right of action on the part of the plaintiffs, if any they have, since, as stated by the Supreme Court of Spain in its

judgment of March 2, 1912: 'Acquisitive prescription, both ordinary and extraordinary, although perhaps at times in conflict with the ideals of justice, is a social and legal institution created by the legislators of all peoples and times which, being intimately related with the origin and basic rights of property, creates a lawful title in favor of the possessor of a thing that has been abandoned by its owner and which becomes the property of the possessor when the owner allows a certain statutory period to elapse without recovering the same, for if this were not the case, there would be no security of fortune nor could the legal controversies to which the instability of ownership gives rise be avoided.'

"It has not been shown by the plaintiffs that they were ever in possession of the property, but it has been shown that since about the year 1882 the urbanization of the town of Barceloneta began and that neither the plaintiffs nor their ancestors presented themselves during this long period up to the present nor in any way acted as owners of any particular portion of land claimed to belong to them; nor that they were or had been in physical possession thereof and that on the contrary it has been proved by the defendants, as we have stated, by public documents—mostly recorded—and oral evidence that they and their predecessors were in quiet and uninterrupted possession as owners under color of title of conveyance of ownership and in good faith for more than ten years of the lots held by them with their respective house and establishments.

   *        *        *        *        *        *        *

"It is a fact testified to by Guillermo Carrión, witness for the plaintiffs, that the town of Barceloneta was founded in the year 1882, at which time the Conde de Carpe Street bisecting the town was also inaugurated, the lots being successively purchased and the houses erected thereon.

"The witness Venancio González Olivo testifies that the town of Barceloneta was founded in the year 1882, at which time he arrived there and that Conde de Carpe Street was already in existence and open to traffic with several houses on each side and others in process of erection. Witness Fernando Suria, 56 years of age, testifies that he has always lived in the town of Barceloneta; that at the time of the San Ciriaco hurricane E. Giorgetti y Cía. owned the block on the west side of Conde de Carpe Street and Miguel Arzuaga the other, who held the same in 1898, or five years earlier, those being the lots now held by the defendants.

"These, as we have stated, have produced full documentary evi-

dence in support of their respective property rights to the corresponding lot possessed by each of them.''

There is no separate assignment of error, but we quote from the brief for appellants enough to show the grounds upon which a reversal is asked.

''The court below erred in holding and taking as a basis for its judgment that there is a lack of clarity and precision in the allegations of the complaint.

''2. The court below erred in dismissing the complaint on the ground that there is no cause of action; that is, that the complaint does not contain the allegations necessary to determine the action in ejectment brought therein. Such an exception was taken by the defendants and the court in passing upon this point as a demurrer, decided against the defendants, holding that the complaint contains all the necessary allegations.

''3. The court below erred in holding that it is not enough to show the right under which the thing claimed was acquired, but that the right to the present ownership is also necessary, for although it is true that such doctrine is in harmony with the jurisprudence of this court as set forth in the case of *Quintero* v. *Soca,* it is none the less true that such doctrine has been subsequently and recently modified by our supreme juridical authority.

''4. The court erred in its opinion in holding that the proof by the plaintiffs of their hereditary title and that their ancestors also held the property in dispute, is not sufficient, but that they (the plaintiffs) must also show that they had been in possession of the same for some time. This is a crass error, since it is elemental law that the heir continues the possession of his ancestor.

''5. The court below erred in holding that the action of the plaintiffs had prescribed; for, first of all, no such defense was made by any of the defendants and, secondly, all the facts necessary to support the defense of prescription were not adduced at the trial. And for equally good reasons the court erred in basing its judgment on the acquisitive prescription of ownership in favor of the defendants.

''6. The court below also erred in weighing the evidence, since all the allegations of the complaint which had been attacked in the different answers were supported by the documentary and oral evidence adduced by the plaintiffs.

''7. The court below erred during the process of the trial in

allowing the defendants to introduce documentary and oral evidence regarding matters not pleaded in defense in the answer over our opposition and exceptions taken on pages 99, 103, 108, 112, 146 and 164 of the transcript of the evidence, on the last page of which the judge of the lower court gave as his reason for admitting said evidence that he was not in the habit of rejecting proof.

"8. The court below also erred in its rulings during the examination of Notary Juan Z. Rodríguez. *Vide* pp. 167 *et seq.* of the transcript. It will be seen from this examination, in which the plaintiffs' objections are noted, that the court allows questions about matters not pleaded; and therein also appears the error of the court in its general conclusion that the plaintiffs did not establish their title and the identity of the real estate, for it is shown on page 168, as a result of said examination, that the attorney for the defendants appears as admitting that the parcel of land claimed by the plaintiffs and composed of the various lots in possession of the defendants is the same that the plaintiffs inherited from their mother, Joaquina Llenza, but states that the plaintiffs are not the owners because Joaquina Llenza sold it before her death and in corroboration thereof produces the statement of Notary Juan Z. Rodríguez. We are therefore of the opinion that the introduction by the defendants of such evidence and the making of such statements by their counsel, Attorney Flores, are tantamount to an admission of the essential pleadings of the plaintiffs; and it alone remains to be ascertained whether the defendants proved that Joaquina Llenza really sold said parcel before she died.

"9. The court also erred in its ruling upon the episode mentioned on page 172 of the transcript. Such incident is a further admission made by the defendants to the same effect as the one before, as they were trying to prove that they are the owners of the lots claimed through acquisition from the mother and ancestor of the defendants. We stated our reasons for our objection at the time we formulated the same and not wishing to burden the court, we abstain from reproducing the same at this time, but simply pray this tribunal to give the same due weight in reaching its decision, to which end we shall consider that we have here reproduced the reasons set forth on pages 172 and 173 and supplemented on page 182 of the transcript.

"10. And in like manner the lower court erred during the production of the documentary and oral evidence, in overruling the objections of the plaintiffs to which exceptions, herein considered as reproduced for purpose of showing grounds of such errors, were taken."

One of the answers, after demurrer for want of facts sufficient to constitute a cause of action, followed by various specific admissions and denials and a general denial of all matters not so admitted, reads thus:

"1. Defendant Juan T. Puig states that he at present is in quiet, public and peaceful possession, under just title duly recorded in the registry of property, of a lot that he purchased from Fernando Suria as shown by public instrument executed before Notary José Alegría Santos in the town of Barceloneta on July 24, 1914, which is duly recorded in the Registry of Property of Arecibo on the reverse side of page 1 of volume 21 of Barceloneta, property No. 949, record No. 2.

"And it is now pleaded by this defendant that his vendor, Fernando Suria, purchased said property from Evangelista Caballero, as shown by public instrument executed before Notary Manuel Paz Urdaz, recorded on page 1 of Vol. 21 of Barceloneta, property No. 949, record No. 1, said vendor being in possession thereof under just title and as owner for many years, it being further alleged that Evangelista Caballero in turn was in uninterrupted possession of said lot under just title.

"2. Defendant Antonio Rodríguez Avilés alleges that the lot owned by him in the town of Barceloneta forms a part of, or rather is the half of, a lot purchased by Juan T. Puig from Fernando Suria and belongs to this defendant by virtue of purchase shown by deed executed on April 8, 1915, before Notary Angel Villamil, and that he is therefore in possession thereof under just title and without opposition on the part of any one.

"3. The defendant Isaac Martínez declares that he acquired the house and lot owned by him in the town of Barceloneta under title of purchase from Venancio González Olivo, as evidenced by public instrument executed in Barceloneta on January 21, 1913, before Notary José Alegría Santos and duly recorded in the registry of property on the reverse side of page 71 of Vol. 15 of Barceloneta, property No. 781, record No. 6. And this defendant now states that Venancio González was in uninterrupted possession of said lot for a number of years under just title.

"4. Defendant Santiago Acevedo maintains that he acquired the lot owned by him in the town of Barceloneta by purchase from Miguel Arzuaga, as shown by deed No. 70 executed before Notary Francisco Prado Morales in the town of Manatí on May 9, 1906, and is

in quiet, public and peaceful possession in good faith and with just title as and from that date. And it is further contended that Miguel Arzuaga was also in possession of said lot without opposition on the part of any one and that the lot was recorded in the registry of property on page 175 of Vol. 14 of Barceloneta, property No. 756, record No. 1.

"5. Defendant Ambrosio Sánchez states that he owns a lot in the town of Barceloneta which he acquired by purchase from Luis Arzuaga, as attorney in fact of Miguel Arzuaga, under deed executed in Barceloneta on November 10, 1906, before Notary E. Fernández Vanga, said title being recorded in the registry of property at page 177 of Vol. 16 of Barceloneta, section No. 2 of Manatí, property No. 283, record No. 1. And this defendant further alleges that his vendor, Miguel Arzuaga, was also in uninterrupted possession of the said lot for many years, without objection on the part of any one.

"6. Defendant Manuel Massó affirms that he acquired the lot he owns in the town of Barceloneta by purchase from Miguel Arzuaga, as shown by public instrument executed in the town of Manatí on August 3, 1905, before Notary Francisco Prado Morales, said title being recorded in the registry of property at page 222 of Vol. 14 of Barceloneta, section No. 2, Manatí, property No. 762, record No. 1. This defendant now alleges that said lot was in possession of Miguel Arzuaga under just title and duly recorded in the registry of property for many years, without such possession having been interrupted by any one.

"7. All the defendants here represented contend that the lots hereinbefore mentioned do not and never did form a part of the parcel of land described in the third count of the complaint and also deny that any of said lots are included in said parcel of land.

"8. The defendants also allege that none of them is in the unlawful possession or enjoyment of any lot belonging to or which may have belonged to the plaintiffs in this action, further alleging that said plaintiffs do not own and have never owned any parcel of land or part thereof which is comprised within the limits of the lots before mentioned and hence have no recorded title nor any good ground for the recording of title in the registry of property."

Another answer, after like demurrer, admissions and denials, proceeds as follows:

"Defendant Primitivo Mercado alleges that he is now the owner in the town of Barceloneta of a lot which is recorded in the registry

of property on page 52, over, of Vol. 17 of Barceloneta, section No. 2 of Manatí, property No. 838, record No. 2. That he has been in quiet, public and peaceful possession of said lot since May 30, 1909, when he acquired the same by purchase from Eusebio Terrón Santiago as shown by public instrument No. 197 executed on the same day before Notary Manuel Paz Urdaz. It is further alleged by this defendant that his vendor was also in the quiet, public and peaceful possession of said lot for many years without objection on the part of anyone.

"2. The defendant here represented alleges that the lot hereinbefore mentioned is not and never was a part of the parcel of land described in the third paragraph of the complaint.

"3. This defendant likewise denies that he is in the unlawful possession or enjoyment of any lot that belongs to or has belonged to the plaintiffs in this action, and alleges moreover that said plaintiffs do not own and have never owned any parcel of land, nor part thereof, comprised within the limits of the said lot, and that said plaintiffs have no title, right or interest in said lot.

"The defendant Francisco Estela affirms that he now owns a lot situate in the town of Barceloneta which his wife purchased from Bonocio Ramos under deed No. 24, executed before Notary Eduardo Acosta Quintero at Manatí on July 9, 1912. That he has been in quiet, public and peaceful possession of said lot under just title since the date of its acquisition, and further alleges that Bonocio Ramos acquired the said lot by purchase from Esteban Olivi y Laureano who was likewise in possession thereof as owner for many years.

"2. Defendant Francisco Estela also states that the foregoing lot is not and never was a part of the parcel of land described in clause 3 of the complaint.

"3. Said defendant also alleges that he is not in unlawful possession or enjoyment of any lot belonging to, or that ever did belong to, the plaintiffs in this action, submitting further that said plaintiffs do not own and never did own any parcel of land, or portion thereof, comprised within the limits of the said lot, and that said plaintiffs have no title, right or interest herein."

Two other defendants, after making certain admissions,

"III. Deny the other facts of the complaint and in lieu thereof affirm that Alejandro Fernández García owned and that Antonio Rodríguez Avilés owns the lot No. 7 referred to in paragraph five by virtue of purchase by the former from Ramón Rosado and that

they have exercised and are exercising their right in good faith, with just title and openly; and as to lot No. 2 the same is in possession of Alejandro Fernández who took under like title of purchase and also in good faith, publicly and with just title. And it is further alleged that the property the recovery of which is sought was never awarded to the plaintiffs under title of inheritance and that they never acquired the ownership thereof in that or any other manner.''

Another answer filed after the overruling of a demurrer contains the following:

''Ramón Balseiro, Ramón Rosado, Fernando Suria, Evangelista Caballero, Venancio González, Isabel Caballero, Vicenta Arzuaga, Ramona Balseiro, firm of Martínez & Eguen, M. Martínez & Eguen, Adolfo Eguen and Succession of Avelino Natal, defendants in the above entitled case, appear by their attorney H. Díaz, and, in answer to the complaint, allege and say:

''FIRST DEFENSE.

''These defendants deny each and every of the facts set forth in the complaint and express their nonconformity with the following allegations.

''SECOND DEFENSE.

''The plaintiffs claim an undivided interest of ten-elevenths of the parcel of land of four acres described in the complaint without describing such ten-elevenths part or fixing the boundaries thereof. And they contend that of the total of said four acres each of the defendants unlawfully holds certain parcels of land without specifying the superficial area or the boundaries of each of such parcels.

''2. The plaintiffs, who are not the owners of all of the said four acres, appear in the complaint for the recovery of the ten-elevenths part of said four acres only as testamentary heirs of Bonocio Llenza y Feliú and Joaquina Llenza y Gago.

''3. It is not stated in the complaint that the said parcel of four acres is recorded in the registry of property in the name of the original ancestors Bonocio Llenza, Joaquina Llenza or in that of the plaintiffs. The defendants making this answer, acquired land owned by them in the ward of the town of Barceloneta from persons other than Bonocio Feliú, Joaquina Llenza y Gago and the plaintiffs, said defendants having their titles to such acquisitions recorded in the registry of property, said acquisitions never having formed part of the four acres referred to in the complaint.''

Of this last mentioned group the defendants Balseiro and Rosado as stated, *supra,* by the trial judge, were eliminated through a compromise.

The sufficiency of none of these answers seems to have been challenged by demurrer or otherwise in the court below.

Following the citations given by appellant, *supra,* we find at the pages indicated the following:

"ATTORNEY FLORES.—I also offer a certificate of the Registry of Property of Arecibo to the effect that Evangelista Caballero owned in Barceloneta a lot identically the same as that described in the complaint.

"ATTORNEY LLORENS.—We object to that evidence, because it is not a ground of defense. Because in the answer the defendant Caballero denies that he has ever owned land comprised in that parcel.

"JUDGE.—The evidence is admitted.

"ATTORNEY LLORENS.—We except on the ground that the evidence is not in accord with the allegations of the answer.

"JUDGE.—The court wishes to state that a refusal to admit this evidence on the ground on which the exception is taken could be regarded as a prejudgment by the court of the proof of identification of the defendants. Exhibit 'B'—Defendants.

  *   *   *   *   *   *   *

"ATTORNEY FLORES.—We also offer in evidence a deed executed by Manuel Massó to Evangelista Caballero dated October 11, 1907.

"ATTORNEY LLORENS.—The same objection as before.

"THE JUDGE.—The same ruling; defendants' exhibit 'C.'

"ATTORNEY LLORENS.—The same exception and we object on the same grounds.

  *   *   *   *   *   *   *

"ATTORNEY FLORES.—We also offer in evidence a certificate of the registrar of property showing that the ownership of a specified house and lot in the town of Barceloneta is recorded in the name of Vicenta Arzuaga; and in connection with that same certificate a deed of sale executed by Manuel Díaz Fonseca and his wife, Joaquina Llenza Gago, to Miguel Arzuaga.

"ATTORNEY LLORENS.—We object to this evidence, because if it is sought to show title the best evidence is the title and not the record; and the second reason is because Vicenta Arzuaga did not

submit this ground of defense. It is the same case as the previous one.

"JUDGE.—As to the first, the court knows the jurisprudence relative to cases for the recovery of real property.

"ATTORNEY LLORENS.—We except on the same ground as before, and further because it is not the best evidence of the allegation sought to be proved.

"JUDGE.—As to the first, the court rules on the ground stated and, second, because it is not sought to show the ownership, but a means of acquisition. Defendants' Exhibit 'D.'

\*        \*        \*        \*        \*        \*        \*

"ATTORNEY FLORES.—I submit deed No. 24, executed by Rafael San Millán in the name of Adolfo Eguen in his capacity of managing partner of the firm doing business in Barceloneta under the name and style of Martínez y Eguen, before Notary Santiago B. Palmer on February 6, 1916.

"ATTORNEY LLORENS.—It is the same question as before in which that defense is not advanced.

"JUDGE.—The same general ruling.

"ATTORNEY LLORENS.—We take exception.

"JUDGE.—Admitted and marked 'Defendants' Exhibit E.'

\*        \*        \*        \*        \*        \*        \*

"ATTORNEY FLORES.—Deed of Félix Massó to Alejandro Fernández, executed on September 22, 1911.

"ATTORNEY LLORENS.—The answer of this party consists of a denial of all the facts of the complaint and he offers that deed which refers to other matters.

"ATTORNEY FLORES.—It is a deed with right to repurchase.

"JUDGE.—That evidence is not admitted because it is a transitory title.

"ATTORNEY FLORES.—I also offer the deed executed by Ramón Balseiro and his wife in favor of Fernando Suria.

"ATTORNEY LLORENS.—We object to that evidence on the same ground as the former and also because it treats of a title which has not been recorded.

"ATTORNEY FLORES.—In connection with that deed I offer a certificate of the registrar of property to the effect that the same is recorded.

"ATTORNEY LLORENS.—Well, just the same general objection that we have made and our exception.

"JUDGE.—The same ruling and let the deed be marked with the

letter 'L' and the certificate with the letter 'Ll' as defendants' exhibits.

"Attorney Flores.—I offer this same certificate for the purpose of applying the same to the deed made by Venancio González in favor of Isaac Martínez.

"Attorney Flores.—And I further offer as general evidence for the defense of all the defendants a certificate of the registrar of property showing that neither Bonocio Llenza y Feliú and Joaquina Llenza y Gago, Luis Díaz Llenza, etc. nor any other person, has the title to the ownership or possession of a parcel of land of an area of four acres situate in the ward of the Pueblo, municipal district of Barceloneta, recorded in his or her name.

"Attorney Llorens.—We object to this evidence, because in our complaint there is no allegation that such parcel of land is recorded. This certificate is not pertinent. The question of whether a property is recorded or not is no ground of proof that it does not belong to a person.

"Judge.—With what object is the certificate offered?

"Attorney Flores.—To corroborate the fact that the plaintiffs have never possessed nor held the ownership of the four acres.

"Judge.—I admit it because I am not in the habit of refusing to admit evidence. Defendants' Exhibit 'M.'

"Attorney Llorens.—We take no exception as to that evidence."

Sections 136–37, 142 of our Code of Civil Procedure, indicating the manner in which an immaterial variance as well as other defects and errors not affecting the substantial rights of the parties should be regarded, are set forth in full in *People* v. *Zamorano*, 28 P. R. R. 675, at page 684 and need not be recopied here.

See also text and cases cited in *Guzmán* v. *American Railroad Company,* 29 P. R. R. 375, at pages 388 and 389.

In *Standard Oil Company* v. *Brown,* 218 U. S. 78, at page 84, it is said that—

"The rule is familiar and elementary that the pleadings and proof must correspond, but a rigid exactitude is not required. In Nash v. Towne, 5 Wall. 689, 698, it is said that modern decisions in regard to the correspondence between the pleadings and the proof are more liberal and reasonable than former ones, and states the rule to be by statute in the Federal courts 'to give judgment according

to law and the right of the cause.' It was observed that 'it is the established general rule in the state tribunals that no variance between the allegations of a pleading and the proofs offered to sustain it shall be deemed material, unless it be of a character to mislead the opposite party in maintaining his action on merits.' The final comment of the court is that irrespective of those statutes, however, no variance ought ever to be regarded as material where the allegation and proof substantially correspond. See also Liverpool and London and the Globe Ins. Co. v. Gunther, 116 U. S. 113; B. & P. R. R. Co. v. Cumberland, 176 U. S. 232, 238.''

''And,'' it has been said, ''under such statutes it is not enough for a party to allege merely that he has been misled, but it must be proved to the satisfaction of the court. An affidavit should ordinarily be filed showing in what respect the party has been surprised and misled.'' 31 Cyc. 703, and cases cited.

There was no intimation in the court below, nor does the brief for appellant suggest, that plaintiffs herein were in any way taken by surprise or misled to their prejudice.

The other objections to the admission of evidence are largely of the same general character, and, in so far as they might be considered as meritorious in a strict technical sense, no prejudice is shown. We find no such manifest error in the weighing of the evidence as would justify us in disturbing the finding that defendants established the several affirmative defenses, more or less vaguely and defectively set up by them; and the errors, if any, committed in other respects, were harmless.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf and Aldrey concurred.

Mr. Justice Franco Soto took no part in the decision of this case.